Filed 4/19/21  In re Johnny P. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JOHNNY P., Jr. et al., Persons Coming Under the Juvenile Court Law. | B306565 (Los Angeles County Super. Ct. No. 18LJJP00459C-E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOHNNY P., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven E. Ipson, Juvenile Court Referee. Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephanie Jo Reagan, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Johnny P., the father of now-12-year-old Johnny P., Jr., seven-year-old Samantha P., and five-year-old daughter A.P., appeals the juvenile court's jurisdiction findings and disposition order declaring the children dependents of the court and removing them from Johnny's custody after the court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b)(1).[1]  Johnny contends the court's jurisdiction findings as to him and its disposition order were not supported by substantial evidence and the court abused its discretion by ordering him to complete a six-month substance abuse treatment program.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Children's Detention*

In October 2019 the Los Angeles County Department of Children and Family Services (Department) received a report that Samantha and A.P. had not been to school for two weeks. The caller also reported a concern that the children's mother, Darline R., was "incredibly violent" and "addicted to drugs." When a Department social worker visited the family home a week later, Samantha answered the door; but Darline refused to

---

[1]     Statutory references are to this code.

come downstairs and yelled at the social worker to leave. Darline eventually allowed the social worker to enter and reluctantly answered questions. The social worker observed an empty bottle of vodka on the counter and trash and debris on the floor. The kitchen had no stove or refrigerator. Darline explained the family had just moved in and the appliances were to be provided soon. Darline refused to identify four adults who were observed in the attached garage. Darline denied any drug or alcohol use. Darline told the social worker Johnny was currently incarcerated and they were not in contact.

The social worker met privately with Samantha, although the social worker noted Darline was yelling at Samantha from downstairs throughout the interview and eventually declared the interview was over. The social worker observed Samantha's hair was uncombed and her face was dirty. Samantha confirmed she had not attended school since moving out of the home of her maternal grandmother, Maria S., a few weeks earlier. According to Samantha, three adults lived in the home in addition to Darline, including Darline's boyfriend. Samantha reported typically not being offered food until her stomach hurt and she asked Darline for something to eat. She also said she was frequently left alone in the home when Darline went out or went into the garage with her friends to smoke cigarettes. Samantha told the social worker Darline "does bad stuff," including hitting the children with a shoe.

Samantha recounted she had been present when Darline and her friends were smoking and drinking in the house; Samantha said the adults acted "funny," which she explained included laughing loudly and yelling. In a later interview Samantha elaborated on her mother's smoking, describing her

mother putting something into a glass pipe with a ball at the end, putting a lighter under it and making it fill with smoke and inhaling it. Samantha said her mother and her friends do this in the house in front of her.

The social worker also interviewed Maria, who stated Darline, Samantha and A.P. had been living with her until recently. Maria was extremely concerned about the family moving out because Darline was violent and did not properly care for the children. According to Maria, when she had last seen the girls, they were dirty, hungry and afraid of being left alone or hit. Johnny, Jr. was living with his paternal grandmother, Adelina A., who had recently moved to Arizona. In a subsequent interview Maria told the social worker Johnny is an alcoholic and she does not think he could stay sober.

At the request of the Department, social workers from the Arizona Department of Child Safety interviewed Johnny, Jr. at Adelina's home in Arizona. They reported Johnny, Jr. appeared clean, healthy and knowledgeable. Johnny, Jr. said he had been living with his dad and Adelina since he was approximately three years old. His father had been incarcerated for the past three months, and he had last spoken to him about a month earlier. Johnny, Jr. stated he was afraid of Darline because she spanked him and hit him with a sandal all over his body. He said she did the same thing to A.P.

At the time of the referral A.P. was in Arizona visiting Johnny, Jr. and Adelina; she was also interviewed by the Arizona Department of Child Safety. A.P. confirmed that Darline hit her with a sandal on her hand and arm, leaving bruises and marks. She said there is never much food in her mother's house, and she has been left home alone on more than one occasion. A.P. also

4

stated adults whom she did not know came to the house at night. She reported Darline smoked cigarettes and Johnny drank beer. She also said Darline and Johnny hit each other and once Johnny had to go to the hospital because he was bleeding. In a later interview with the Department, A.P. corroborated Samantha's account that Darline's friends live in the home with them.

On December 27, 2019 the juvenile court authorized the Department to detain the children from Darline. Samantha and A.P. were placed in foster care. Johnny, Jr. remained with Adelina.

On December 31, 2019 the Department filed a petition pursuant to section 300, subdivisions (a), (b) and (j), alleging Darline had physically abused the children and had a history of, and current problem with, substance abuse that interfered with her regular care and supervision of the children. The petition also alleged Darline had failed to reunify with two older children, Catherine R. and Alyssa E.,[2] and had a prior dependency case involving Johnny, Jr. and Samantha. The petition further alleged Darline and Johnny had failed to make an appropriate plan for Johnny, Jr. upon Johnny's incarceration because they had failed to authorize Adelina to obtain medical care for Johnny, Jr.

The detention report contained information regarding the family's prior dependency proceedings. In 2011 the Department

---

[2] Catherine, now 17 years old, and Alyssa, now 16 years old, were declared dependents of the juvenile court in 2004 based on Darline's substance abuse. Darline failed to reunify with them, and they received permanent placement services. Johnny is not the father of Catherine or Alyssa, and neither child was a subject of this proceeding.

received a report Johnny had repeatedly driven while under the influence of alcohol with Johnny, Jr. in the car. The family received voluntary maintenance services. Later in 2011 Johnny, Jr. was declared a dependent of the juvenile court based on Darline's substance abuse and domestic violence between Johnny and Darline. There was another referral in 2011 related to Johnny's niece, who was in Adelina's custody. The referral stated Johnny would visit Adelina's house while intoxicated, yell and scream at people and steal things to sell for drugs.

In 2013 Johnny, Jr. and Samantha were declared dependents of the juvenile court based on Darline's substance abuse and Johnny's alcohol and methamphetamine abuse. The petition specifically alleged Johnny, Jr. had been in his father's care while Johnny was under the influence of alcohol. The court returned the children to their parents' custody and terminated dependency jurisdiction in 2015.

In 2016 police were called to the home for a domestic violence incident. Darline told police Johnny had come home drunk. He became angry, threw food at Darline and punched her in the shoulder. Darline told the police officers Johnny was frequently physically abusive to her, but she declined an emergency protective order.

The detention report also included Darline's and Johnny's criminal histories. Darline's history included arrests for possession of controlled substance for sale, receiving stolen property and assault with a deadly weapon. Johnny's history included arrests for transportation or sale of narcotics or controlled substances, theft, robbery and multiple convictions for being under the influence of a controlled substance and disorderly conduct intoxication. In August 2016 Johnny had been

arrested for driving under the influence of alcohol. Johnny's 2019 incarceration was based on an outstanding warrant for an arrest in October 2018 for bringing a controlled substance into a prison, jail or other institution.[3]

The detention hearing was held on January 2, 2020. Johnny was not present because he was still incarcerated. The children were detained from Darline; she was ordered to submit for drug testing; and her visits were ordered to be monitored.

In a last minute information filed January 15, 2020 the Department reported Johnny had been released from custody on January 6, 2020 and transferred to an inpatient substance abuse program. Johnny subsequently appeared at a hearing on January 17, 2020, at which he denied the allegations in the petition, was ordered to submit to drug testing and was granted monitored visitation.

The Department filed a first amended petition on January 30, 2020, adding allegations pursuant to section 300, subdivisions (b) and (j), that Johnny's extensive history of methamphetamine and alcohol abuse and his recent alcohol abuse rendered him incapable of providing regular care and supervision to the children.

2. *The Jurisdiction/Disposition Report*

The Department filed a jurisdiction/disposition report on February 14, 2020. The report included additional information regarding allegations of domestic violence by Johnny. According to police incident reports, in October 2009 and January 2011,

---

[3]    The record does not contain any additional information regarding the circumstances of Johnny's arrest or incarceration.

7

Johnny had forcefully pushed, punched and spat at Darline after he had been drinking.

Johnny had been tested for drugs and alcohol twice in January 2020 while in inpatient treatment and had tested negative both times. Due to his treatment program, Johnny had only telephone visitation with the children in January 2020. Darline failed to appear for three drug tests in January and February 2020. She had a monitored visit with Samantha and A.P. in early February 2020 and had been aggressive with the caregiver's daughter, who had transported the children to the visit.

In an interview with the Department social worker, Johnny said he and Darline had been in an "on again off again" relationship for approximately 14 years. When asked if they were currently in a relationship, Johnny replied they were "working on things now." Johnny denied any incidents of domestic violence in the relationship. Regarding his prior substance abuse, Johnny denied any abuse of narcotics but admitted he had a history of alcohol abuse and had prior arrests for behavior relating to alcohol abuse, including a conviction for driving under the influence of alcohol. Johnny explained his drinking became a problem around 2015, but he maintained he had been sober for one year and was currently enrolled in a residential treatment program. According to Johnny, after completion of the substance abuse program, his recent conviction would be "removed" from his record.

In a letter dated January 14, 2020 Johnny's counselor at his treatment program stated that, in the week Johnny had been in the program, he was participating in group activities and

8

appeared "motivated to meet his treatment plan goals and objectives."

Darline continued to deny any current substance abuse or physical abuse of the children. She said Samantha's statement was false and likely coached by Maria. According to Darline she and Johnny broke up in 2013 due, in part, to their methamphetamine use. Darline admitted domestic violence had been an issue in their relationship. Despite denying any current substance abuse, Darline reported she had recently enrolled in a substance abuse program.

The Department social worker conducted follow-up interviews with each child during which their statements were partially consistent with their prior accounts. All three children repeated their accounts of Darline's physical abuse. Johnny, Jr. said he did not have contact with his mother and did not want to live with her because she "would bring strange people around and smoke drugs." As for his father, Johnny, Jr. said, "My dad is in sober living trying to get clean. Dad used to drink beer and smoke cigarettes." Samantha, who had previously described her mother smoking from a pipe and acting strangely, told the social worker she did not know whether her parents used drugs and had not seen her mother acting strangely. A.P. reported her parents "drink and then they get sick sometimes."

The Department concluded Darline and Johnny had demonstrated an inability to properly care for their children due to substance abuse and other issues. The Department noted the children's grandmothers had been their primary caregivers for significant periods of time. The Department recommended family reunification services be provided to Johnny, but

9

recommended Darline receive no reunification services based on her failure to reunify with her older children.

### 3. *The Jurisdiction Hearing*

At the jurisdiction hearing on February 26, 2020, after the court admitted into evidence the Department's reports and documents submitted by Darline and Johnny concerning their substance abuse treatment, Johnny's counsel requested the dependency investigator be called to testify. The investigator explained some of the conclusions contained in the Department's reports. Specifically, concerning Samantha's and A.P.'s ability to understand the difference between the truth and a lie, the investigator stated she believed Samantha understood the difference even if she could not explain it in the abstract. A.P., the investigator explained, "had more of a difficulty understanding" the difference between the truth and a lie.

At the conclusion of the investigator's testimony Darline's and Johnny's attorneys asked the juvenile court to dismiss the petition in its entirety. The children's counsel requested the court sustain the allegations under section 300, subdivisions (a), and (b)(1), but acknowledged the subdivision (j) counts were duplicative.

The court sustained the subdivision (a) and subdivision (b)(1) counts regarding Darline's physical abuse and substance abuse as well as the subdivision (b)(1) count regarding Johnny's substance abuse. The court dismissed the subdivision (b)(1) count concerning failure to make an appropriate plan for Johnny, Jr.'s placement and dismissed the subdivision (j) counts as duplicative. Regarding Johnny's substance abuse the court acknowledged Johnny had two recent negative tests but noted they were while he was living in the

10

structured setting of an inpatient program.  The disposition hearing was continued to a later date.

4. *Disposition Hearing*[4]

In March 2020 Johnny told the Department social worker he was scheduled to complete his inpatient treatment program at the end of the month and intended to live in a sober living facility; he hoped to find a facility that would allow the children to live with him.  Johnny had not had in-person visits with Samantha and A.P. because it was a two-and-a-half-hour train ride each way to see them from his program.  (Johnny, Jr. continued to reside in Arizona with Adelina.)

Ultimately, Johnny completed the inpatient program in early April 2020.  As of late June 2020 Johnny reported he was living with a friend, but he had not provided the address to the Department for assessment.  Johnny had two negative drug/alcohol tests in early March while still residing in the treatment program.  However, since his completion of the program in April and the date of the report in June, 2020, Johnny had failed to show up for any tests, accumulating 14 "no shows." Johnny continued to decline in-person visits with the girls because he was busy with work.

The continued disposition hearing was held on July 8, 2020. Johnny was not present, and his counsel requested a continuance, informing the court he could not reach his client that morning but Johnny did want to participate in the hearing.

---

[4]     The continued disposition hearing, originally scheduled for March 17, 2020, was continued to July 8, 2020 due to COVID-19 restrictions.

11

The court found notice had been proper, and Johnny's counsel's request for a continuance was denied.

Turning to argument on disposition, Johnny's counsel sought return of the children to their father and requested Johnny not be ordered to participate in another substance abuse program. Darline's counsel requested the court order reunification services for her. The children's attorney agreed with the Department's recommendation of removal of the children from Johnny and termination of services for Darline.

The court declared the children dependents of the court, declined to order reunification services to Darline based on her failure to reunify with her older daughters (§ 361.5, subd. (b)(10)) and removed the children from Johnny's custody. The court recognized Johnny had completed a 90-day treatment program but noted he had failed to submit for testing since then and had not provided any information regarding participation in aftercare programs. Accordingly, the court found, by clear and convincing evidence, there would be a substantial danger to the children's physical health and safety if returned home and there were no reasonable means by which they could be protected without removal. The court ordered Johnny to participate in a six-month drug/alcohol program with aftercare.

## DISCUSSION

1. *Governing Law and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm."

12

(§ 300.2; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)  In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."  (§ 300.2.)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child . . . ."  A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements:  (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness.  (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.  (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011)

13

197 Cal.App.4th 159, 165.)  The court may consider past events in deciding whether a child currently needs the court's protection. (*In re J.N.* (Apr. 2, 2021 B308879) __ Cal.App.5th __, __ [2021 Cal.App. Lexis 287, *9]; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; *In re N.M.*, at p. 165.)  A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In Kadence P.*, at p. 1384.)

Before the court may order a child removed from the physical custody of a parent with whom the child was residing at the time the dependency proceedings were initiated, it must find by clear and convincing evidence that the child would be at substantial risk of physical or emotional harm if returned home and there are no reasonable means by which the child can be protected without removal.  (§ 361, subd. (c); *In re T.V.* (2013) 217 Cal.App.4th 126, 135; see *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 347.)  "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child." (*In re T.V.*, at pp. 135-136.)

Upon removal, "The juvenile court may direct any reasonable orders to the parents . . . as the court deems necessary and proper," including requiring participation in counseling, education and treatment programs.  (§ 362, subd. (d); *In re Briana V.* (2015) 236 Cal.App.4th 297, 311 ["'[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly'"]; *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673 [same].)

14

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

In evaluating the propriety of a disposition order removing a child from a parent or guardian pursuant to section 361, in view of the requirement the juvenile court make the requisite findings based on clear and convincing evidence, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005; see *In re V.L.* (2020) 54 Cal.App.5th 147, 155 [*O.B.* is controlling in dependency cases].) We review the court's orders directing a parent to participate in counseling, education and treatment programs for abuse of discretion. (See *In re Briana V., supra,* 236 Cal.App.4th at p. 311.)

### 2. *The Jurisdiction Findings Are Reviewable*

Johnny does not challenge the juvenile court's findings as to Darline. Those findings provide an independent basis for affirming dependency jurisdiction over Johnny, Jr., Samantha and A.P. regardless of any alleged error in the finding as to Johnny. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; "'"the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent"'"]; see *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; *In re Briana V., supra,* 236 Cal.App.4th at pp. 310-311.) As a result, even if we were to strike the finding as to Johnny, the juvenile court would still be authorized to exercise jurisdiction over the children and to enter all reasonable orders necessary to protect them, including orders binding on Johnny that address conduct not sustained in the petition. (*In re Briana V.*, at p. 311; *In re I.A.*, at p. 1492; see generally § 362, subd. (a) [the juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child"].)

Although acknowledging this general principle of justiciability, Johnny asks us to exercise our discretion to reach the merits of his challenge to the jurisdiction finding as to him because that finding serves as the basis for the dispositional order also challenged on appeal and could reasonably have far-reaching consequences in these and future dependency proceedings. (See *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re J.C.* (2014) 233 Cal.App.4th 1, 4; *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.) The Department in its respondent's brief does not contend we should decline to review the merits of

16

the jurisdiction finding, and we agree it is appropriate to do so in this case.

###### 3. *Substantial Evidence Supports the Jurisdiction Finding as to Johnny Under Section 300, Subdivision (b)(1)*

Johnny does not deny his significant history of alcohol abuse but contends the evidence did not establish that he was currently abusing alcohol or that any of the children was at risk of harm at the time of the jurisdiction hearing.

In arguing a lack of evidence of current substance abuse, Johnny relies on his enrollment in a residential treatment program and his negative substance tests during that program, as well as his statements to the Department's social worker that he had been sober for one year. Johnny's argument disregards substantial circumstantial evidence he had not resolved his severe alcohol abuse problem. The record contains evidence of multiple arrests and convictions related to alcohol and drug use dating back to 1987. In 2011 the Department received a report Johnny had repeatedly driven under the influence of alcohol with Johnny, Jr. in the car. Another referral in 2011 related to Johnny's niece included allegations Johnny drank to excess and became aggressive. In 2013 the juvenile court sustained an allegation Johnny abused alcohol and methamphetamine. While dependency jurisdiction was terminated in 2015, indicating some progress on Johnny's part in dealing with his substance abuse, police were called to the home in 2016 because Johnny was drunk and threatening Darline. Johnny was also arrested in 2016 for driving under the influence of alcohol and again in 2018 for bringing a controlled substance into a prison or other institution. Furthermore, the criminal court's decision to allow Johnny to attend an inpatient treatment program, as well as the treatment

17

program's decision to accept Johnny, reasonably support the inference he had not completely overcome his more than 30-year substance abuse issues on his own.

This reasonable inference that Johnny had not resolved his issue with alcohol abuse, even if he was working on the problem, was further supported by the statements of Johnny's family members to the Department social worker. Maria said she believed Johnny was an alcoholic and could not maintain sobriety. A.P., only four-years-old at the time of her interviews, knew that her father drank beer and said her parents got sick sometimes after drinking. Johnny, Jr. said his father "used to" drink beer but was still "trying to get clean." This evidence amply supported the finding that Johnny suffered from significant alcohol abuse issues and, at best, was in only the initial stages of treatment. (See *In re K.B.* (2021) 59 Cal.App.5th 593, 601-602 [statement by pastor that mother previously used drugs, seven-year-old arrest for possession of a controlled substance and statements from children regarding mother's behavior supported inference mother currently abuses drugs]; *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726 [evidence of mother's drug use supported by "involvement in the criminal court system and dependency court system as the result of the drug use"].)

Johnny next argues there was insufficient evidence to establish his use of alcohol interfered with his ability to properly care for his children. Specifically, he argues it was Darline's behavior that instigated Department involvement with the family in 2019 and there were no allegations the children were at risk because of his behavior. Johnny's argument ignores that, with respect to a child of "tender years," "'the finding of substance

18

abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.'" (*In re Christopher R., supra,* 225 Cal.App.4th at p. 1219; accord, *In re Kadence P., supra,* 241 Cal.App.4th at p. 1385.) Because Samantha and A.P. were six years old or younger at the time of the jurisdiction hearing, the finding of substance abuse effectively created a presumption that Johnny was unable to provide appropriate care for them, a presumption reinforced by evidence Johnny had in the past repeatedly driven while under the influence of alcohol with a child in the car and acted aggressively and violently when intoxicated. In addition, in the prior dependency proceeding the juvenile court found Johnny's alcohol abuse created a substantial risk of harm to the children and Johnny had failed to deny he had been under the influence of alcohol when caring for his children in the past. This evidence was a sufficient link between Johnny's alcohol abuse and the risk of harm to the children to support the jurisdiction finding. (See *In re L.W., supra,* 32 Cal.App.5th at p. 850 [mother's two arrests for driving under the influence and conviction for reckless driving provide nexus between substance abuse and substantial risk of harm to child].)

4. *Substantial Evidence Supports the Removal Orders*

Johnny's sole argument for reversal of the juvenile court's disposition order is that it was based on jurisdiction findings that are not supported by substantial evidence. The evidence supporting the juvenile court's finding of substantial risk of harm supplies ample evidence for the court's order removing the children from Johnny's custody. Moreover, by the time of the disposition hearing, any doubt that may have existed as to Johnny's inability to maintain the sobriety he had achieved while

19

in a residential treatment program was resolved by his apparent failure to participate in aftercare or outpatient treatment (as discussed, he provided the Department and the court no evidence of any such participation) and his 14 "no shows" to alcohol/drug tests, which are "'properly considered the equivalent of a positive test result.'" (*In re Kadence P., supra*, 241 Cal.App.4th at p. 1384.)

Finally, Johnny contends the juvenile court abused its discretion in ordering him to complete a six-month substance abuse program. Although Johnny maintained he had been sober for one year prior to the jurisdiction hearing and completed a 90-day treatment program three months prior to the disposition hearing, his evident failure to participate in aftercare and his multiple missed tests established that Johnny needed additional support to maintain his sobriety.

Johnny had also continually denied the severity of his substance abuse, saying it became a problem around 2015, although he had multiple arrests and convictions for conduct related to his substance abuse dating back more than 25 years. Johnny's denial of the severity of his alcohol use renders questionable the prospect of sustained recovery in the absence of further treatment. (See *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"]; see also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].)

On this record the court's requirement that Johnny complete additional substance abuse treatment, far from being

20

arbitrary and capricious, was reasonably related to the care and protection of the children.

## DISPOSITION

The juvenile court's findings and orders are affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.